*Hennen* for the plaintiff, *Watts & Lobdell* for the defendants.

---

### HAMILTON vs. HAMILTON & AL.

APPEAL from the court of probates of the parish of West Feliciana.

MARTIN, J. delivered the opinion of the court. This is a suit for the partition of the

A trifling variance, between the expressions used by the testator, and the words written by the notary, is not fatal.

The clause declaratory of

6ns143
46 1416
46 1428

6ns143
49 1387

Eastern Dist. estate of the late J. Hamilton, instituted by
*June.* 1827 his widow against his heirs.

HAMILTON
*vs.*
HAMILTON &
AL.

the testator's
sanity is a
mere formula.
The notary
may ask of
the testator in
what manner
he wishes to
dispose of his
property.
Sales of de-
ceased per-
sons' estates
are made with
reference to
the inventory
and [appraise-
ment
A child must
collate the va-
lue of the hire
of slaves lent
to him by his
father, to ena-
ble him to
procure others
But not that
of one sent to
attend the
child as a do-
mestic.

W. S. Hamilton, a son by a first marriage, complains of the admission of the will to registry, alleging the unsoundness of the testator's mind, and because it was not made in the manner required by law.

We do not think the judge of probates erred in overruling both these objections.

It is true, the testator had, for several years, suffered from the consequences of an applopectic attack, which terminated in palsy. Yet the testimony shews that his mental faculties were not so affected as to disable him from making a will. The principal part from which the opposite conclusion could be rationally drawn, is, his running to persons near him for information of the name of some of his children, and his apologizing for this circumstance, by saying they had such long names that by going over them he had got confused. The record shews he had six children, all of whom, but one, had more than two names, and one of them, five, being called John Walsh Andrew Jackson Hamilton.

On the second ground, it is urged that every word in a will must be *dictated* by the testator

and his very expressions taken down. It is next shewn that the amanuensis employed to write the will has deposed that the clause declaratory of the testator's sanity was not declared by him, and that with regard to another part of the will, to the question whether he had taken down the very words of the testator, the amanuensis answered, that the testator did not speak word by word what is written, but being asked what disposition he meant to make of his property, answered, *in substance*, in the manner that is written.

Eastern Dis't.
*June*, 1827.

HAMILTON
*vs*
HAMILTON &
AL.

We consider the clause declaratory of the testator's sanity, as a mere formula, like the words "In the name of God, Amen," not essential to the will—mere words of form with which notaries are in the habit of prefacing the declaration of the testator's intentions.

We are referred to 5 *Toulliea*, 350, where it is said, that *to dictate*, is to pronounce, word by word, what is designed to be written by another. Hence he concludes that a will cannot be made by *signs* or *interrogations*.

This able writer does not say what, or whether any variance is fatal. On the contrary, from the examples he puts, we understand that the meaning he intends to convey is, that the tes-

EasternDis'ct
June 1817.

HAMILTON
vs.
HAMILTON &
AL.
tator must express his intention orally, not by *signs*, but by words; and that these words are uttered *spontaneously*, and not upon *suggestion.* Had the proposition he meant to illustrate been that contended for by the defendant, this able writer would not have referred to so remote an example.

We know that there have been decisions in some courts of France, requiring the utmost precision in the amanuensis; but we are unable to adopt this doctrine in its utmost extent. It is desirable to have, as much as possible, every word taken down from the testator's mouth; but we cannot adopt the unqualified proposition, that the slightest variation is fatal, as, for example, the substitution of the pronoun *which*, instead of *that.* This would destroy almost every will.

The interrogations, which *Toullier* means to exclude, are the direct or indirect ones, relating to any particular article of property, or any particular person, as the object of the testator's benevolence: not the interrogatories— What are your intentions? How do you wish to dispose of your property? which are only notices of the notary or amanuensis being ready to write, and waiting only for the directions of the testator.

The court of probates refused to allow the Eastern Dist:
*June* 1827.

HAMILTON
*vs.*
HAMILTON &
AL. plaintiff any thing on account of certain bonds, deeds of trust, marriage settlement, or mortgages executed in North Carolina. She is not an appellant, and her counsel in this court has not prayed for the revision of the judgment in this regard.

The defendant, W. S. Hamilton, claims from the estate certain sums of money alleged to have been received by the deceased, as his guardian. On this part of the case, we think justice demands that it be remanded for further examination, and that this defendant be allowed to procure and introduce further proof; that on record, establishing the guardianship, and rendering it more than probable, that money was, or might have been, received by the deceased in his capacity of guardian; and it would be impossible for us to act on this part of the case, without running the risk of doing material injustice.

His claim to be considered as a joint porchaser with his father, of the Hart's estate, we think was properly disallowed; the record establishing that arrangements were made between them, totally inconsistent with a joint ownership.

Eastern Dis e
*June,* 18 7.

HAMILTON
*vs.*
HAMILTON &
AL.

With equal correctness was the clause for reimbursement of money disbursed on improvements on the part of the estate purchased by this defendant disallowed.

Sales of the estates of deceased persons are made with reference to the inventory and appraisement that necessarily precede them. In the present case, the improvements, not having been made by the testator, were considered justly as no part of the estate, and not considered at all in the appraisement. All the immoveable property was purchased by some of the parties to the present suit, who being so to the inventory and appraisement, must be presumed to have acted with full knowledge, and in accordance thereto, and there was no need as to them, of a declaration of the sale of the land being made without reference to the improvements.

This defendant, who was before the sale a creditor, for these improvements, became, by his purchase, the debtor of them, and his demand was thus extinguished by confusion.

We think this defendant is bound to collate the value of the labor of the six or seven slaves which were sent to him by the deceased for the purpose of enabling him, by the use of them,

and other resources, of raising a sum of mo-
ney, to be employed in the purchase of slaves
for his own use.   Had   the  testator given the
negroes, or money to purchase them, what was
then given would be a proper  object of colla-
tion.

The case is different with regard to the slave
Bristol, who was sent to wait upon the defend-
ant.   The bailment was a precarious one; and
the comfort the defendant derived from the at-
tendance of this slave on him,  is not a proper
object of collation. His co-heirs, who remain-
ed in the paternal mansion, deriving, likely, an
equal advantage  from  the service of the ser-
vants kept there for the comfort of the family.

There  is no evidence  to support a charge
against this defendant for the  value  of the
slaves who ranaway from North Carolina.

We think he is chargeable for the fair value
of the use, or a rent for the part of the premi-
ses he occupied.

It is  therefore ordered, adjudged and de-
creed, that so much  of the decree  as charges
the defendant, W. J. Hamilton, with  the hire
of the negro Bristol, and the  price of negroes
Jim and Chloe, be  annulled, avoided and re-
versed; and the claim of the widow and other

Eastern Dist. *June, 1827.*

HAMILTON
*vs.*
HAMILTON &
AL.

heirs against him, be disallowed and rejected; that the case be remanded to the court of probates, with directions to allow a sufficient time to the defendant to introduce proof of his claim against the estate for the balance due by the deceased, as his guardian, and likewise, to receive proof of the alleged surrender of the particular estate on which the estate in remainder of the mother of the defendant depended, in order to ascertain the claim of the deceased to the profit of the estate as a tenant by the courtesy; and in the examination of the evidence to be so produced, to settle the balance, if any, due by the deceased, as guardian to the defendant, and his claim for the rents of the house in New-York; and after this, to proceed to the final partition of the estate, in the manner as it was done before, modified by the result of the settlement of the guardian's estate, and the settlement of the claim for the rents of the aforesaid house, and the opinion of the court in the present decree, the costs to await the final judgment.

*Watts* and *Lobdell* for the plaintiff, *Smith* for the defendants.